20-2103 from the District of Minnesota, Westfield Insurance Company v. Carolina Casualty Insurance Company. Very well, Ms. Novotny, we'll hear from you first. Good morning, Your Honors. May it please the Court, my name is Tammy Novotny and I represent Carolina Casualty Insurance Company. And we are here before you respectfully requesting that the Court reverse the District Court and find that Westfield was obligated to provide coverage to Advanced Auto Transport and Gregory Hansen because the automobile business exclusion upon which Westfield relies exclusively, in which it has the burden to prove, does not apply to the facts of this case. Time permitting, I will explain that it does not apply first because AAT and Hansen admittedly were independent contractors to McNeilis. Therefore, by definition, their transport of the garbage truck was not subject to McNeilis' control, which is a factor that both Westfield and the District Court correctly recognize as a critical factor for application of the exclusion. The exclusion also does not apply because AAT was hired only to provide transportation services, not to perform any business activity specified in the exclusion as it is written. Now, the importance of the garage repair facility having control over the driver at the time of the accident is reflected in the cases that we've cited throughout the brief that have considered similar exclusions. And those cases generally fall into two categories, depending on the nature of the relationship and in turn the existence or the absence of control. The first category of cases are those where the person driving the vehicle is employed by or they're an agent of the repair facility. That is, you have a relationship where the driver is clearly subject to that facility's control. And therefore, it's easy to find that when they're driving that vehicle, they are doing so while working in a business of selling, servicing, or repair, such that the exclusion would apply. Now, courts have also extended this exclusion to apply when vehicles are being driven to or from a garage before or after being serviced. For example, returning a vehicle to a customer, with the courts explaining that driving that situation still may be a necessary part of the repair business. In other words, the courts have recognized that the servicing does not just entail when someone has tools in hand and they're under the hood of a vehicle, but it may extend to returning the vehicle. But when you look at the cases that establish that necessary and integral language, the Weston v. Great Central case, the Humboldt Oil case, and in terms of the United Fire case out of Missouri, they still involve employees or agents of a garage or repair facility. They still involve someone who is driving in connection with work that they do for the garage itself. None of those cases have held that simply because driving or transporting a vehicle might be necessary or it might be beneficial to a business, that it is done while working in that business, regardless of who is doing the driving or regardless of whether the driver is actually doing so subject to control of any of the listed businesses. And that limitation on those line of cases, I think, is recognized by the Western District Court of Virginia in the national liability case that we do discuss in our materials. You also see these concepts come together in the Columbia Insurance v. Baker case that the Eighth Circuit Court issued some years ago. And in that case, the court was asked to consider two exclusions, which excluded coverage for persons using a vehicle while either engaged in or working in a business of service or repair. And the Eighth Circuit Court, like others, seemed to interpret these two exclusions similarly. And the court found that they apply when an individual is engaged in the business of repairing autos or to individuals who have undertaken to repair an auto for hire. And so the court ultimately found that both the engaged in and the working in exclusions applied. And in doing so, the court considered such things as Baker was, by trade, someone who repaired autos. He was hired to repair an auto. He provided a repair estimate. He had started to perform repair services. And he was actually driving from one location to another in order to finish repairing that vehicle. And so the court found both exclusions applied and it found that him driving the vehicle was a necessary part of the repair services that Baker himself was to perform. When you look at those factors that the court considered in Baker, they simply don't exist here with respect to AAT and Hanson. Here you have McNeilis and McNeilis employees who arguably serviced this vehicle by upfitting it, converting it into a garbage truck. And instead of McNeilis having a McNeilis employee or McNeilis agent then drive the truck from Minnesota to Ohio, it decided to hire a third-party independent contractor, that is AAT. And this brings us to the second category of cases. Now, certainly transporting the vehicle from Minnesota to Ohio was necessary and important to McNeilis. But what is significant is here they chose to have that transport be done by an independent contractor. That is by someone who is not subject to their control. That is someone who is not subject to a garage repair facility's control. In this second category, what you have is really you've stepped outside. You've stepped beyond the exclusion as it's written. You've stepped outside of the purpose of these exclusions. It's Wendt versus Wallace. It's actually a Minnesota case from I think the 1932, I believe, often is cited to explain these provisions. And the intention is when a garage repair facility takes control of the vehicle. The thought is that that garage and its insurance company should generally be responsible should something happen as opposed to the vehicle owners insured. And here McNeilis did have control over this vehicle up until the point that it handed the vehicle over to AAT, an independent contractor. And so the line of cases or the cases that we talk in our briefs where you have a motor carrier being hired or sometimes it's a towing company being hired, what the courts do then is they simply look to see, well, is the activity or the service that that independent contractor performing, does that fall within the exclusion as it's written? And you see this analysis in the Maryland casualty case from the Fifth Circuit, again, from the national liability case from the Western District of Virginia, and really all of the cases that we talk about at pages 41 to 44 of our brief. And where the courts have come down and they've explained is if you hire a company to only transport or sometimes to only tow a vehicle, and towing or transporting or delivering is not among the businesses that are listed in the exclusion, then the exclusion does not apply. Now, an owner's insurer certainly may want to exclude coverage when a vehicle is being transported or towed, because certainly the owner doesn't have much control in that situation, and the insurer can exclude coverage. They just have to specify those businesses within its exclusion. It's simply a situation where insurers, including Westfield, are bound by the language they choose to include in a policy and language which they choose to omit. And they can't expect the court to broadly interpret an exclusion to exclude coverage to businesses that aren't listed. Exclusions, of course, have to be interpreted narrowly and strictly. And so when we look at those two categories and you look at this case, McNeillis was hired, excuse me, McNeillis hired AAT simply to transport the truck from Minnesota to Ohio. AAT and Hanson were not involved at all in repairing or servicing or upfitting this truck at all. And Westfield concedes that AAT was an independent contractor. Even if it didn't, that's what the agreement provides. The agreement also specifically says that McNeillis was not going to have any control over AAT's transportation services. Now, in its brief, Westfield directs the court to other provisions of the agreement. But when you look at what they direct you to, essentially, they are either provisions talking about preconditions to transport. For example, you need to have certain insurance or you need to accept the job within so many days. Or they point to provisions that essentially are intended to make sure that the product gets to the customer in a clean, undamaged, acceptable condition. There's nothing there that really talks about McNeillis controlling the means or the method of transportation. Instead, as the district court did correctly recognize, other than instructing where to deliver this truck, McNeillis really had no further involvement. Instead, it was AAT that provided Hansen with a bill of lading. AAT provided routing information that Hansen was following, including up to the point of the accident. AAT provided maps, inspection forms, driver's logs, field reports. And they would have required the driver to call in twice a day to report his location and any issues. AAT drivers, including Hansen, on the other hand, were prohibited from contacting McNeillis for any reason. Those undisputed facts that are in the record simply do not support the court's conclusion that McNeillis was transporting, or excuse me, that McNeillis controlled the transport of this garbage truck. Or that the transport of the truck was done while working in McNeillis' business. Why is control the relevant or determinative factor? Well, because, I mean, the control goes to the nature of the relationship. I mean, I think control reflects if you're working in or if you're not. You don't think performing an essential function in the sales process would be enough to consider someone working in a business of selling? Regardless of control? No. I think if they're performing an essential function and they are doing so as an employee or an agent or subject to the control of that business, they certainly would be. But, I mean, once you hand something over to an independent contractor, I mean, by the very nature, you don't have any control. I know. That's why I ask you why control is the relevant thing. Control is not a word in the policy. Well, it goes to the very purpose of these exclusions. Again, the purpose of the exclusion is recognizing that generally the owner's policies will provide broad omnibus coverage. So, they will say as long as you're, you know, operating this vehicle subject to the owner's control, generally that owner's insurer has to provide coverage. And these exclusions were written into the policy recognizing their situations where the owner, when they hand it over, their vehicle is handed over to a garage, they no longer have control over who's using it. Right. So, on that theory or that purpose, why would Westfield, they don't have any control over Hanson? Well, Westfield as the insurer does not. Or, I mean, Worldwide doesn't have any control over Hanson either. Well, and that's not where you get to the coverage analysis. I mean, the purpose of the exclusion is that the garage has control. Then it's going to be on them. And here when the garage, McNeillis, no longer has control. They basically hand it off to an independent contractor. AAT has control. So, you can no longer say that they're working within McNeillis' business. Again, McNeillis doesn't control the transport at that point once they hand it off to an independent contractor. And the reason Westfield is obligated because if you don't have someone who's transporting or doing something within the exclusion itself, the exclusion does not apply and you have to go back to the omnibus provision itself. This exclusion is intended to carve out an exception to that broad omnibus coverage. And if the exclusion does not apply because you don't have someone performing an activity working in one of the listed businesses, then you're back to the omnibus provision. That basically says as long as you're transporting a vehicle owned by Worldwide and with Worldwide's permission, which are both factors Westfield concedes exist in this case. Westfield must provide coverage under the omnibus provision because you don't have the necessary control. And what you have here is AAT simply transporting this truck in the business of AAT, which is only to transport. And transport is not among the businesses that are listed in the exclusion. Ms. Novotny, has there been a judgment or a settlement in the underlying case yet? Yes. Yes, there has. And so do we necessarily need to decide the excess coverage issue? Yes, because given the amounts there would be, I think Westfield concedes that if the court would reverse and find that Westfield had an obligation, they agree that would be responsible for reimbursing Carolina Casualty the amount that remains on their underlying policy. But then there would still be some amount due beyond that as well. And so I guess I'll reserve, I'm sorry. You may reserve the balance. Thank you for your argument. Mr. Rowley, we'll hear from you. Good morning. May it please the court. Michael Rowley representing Apelli Westfield Insurance Company. Your Honor, I think you asked the question that gets right to the heart of the matter. Why does control matter in this interpretation of an exclusion as this language is written in Westfield's policy? And I don't think that it does. And I don't think that the cases require it. I don't think Columbia v. Baker analyzes it that way. I don't think the Minnesota Supreme Court in their Went v. Wallace case analyzes it that way. I don't think the Grisham case from Arizona, which actually I think is the closest factually at all to embodying what this case has, and it doesn't require that. The Columbia v. Baker case talked of the person driving the vehicle about whether it was necessary and expected in their business. The Wallace case talked about whether the person driving the vehicle was engaged or operating in a business. The policy itself just has the language of working, while working in a business, of selling, servicing, or repairing auto. That exclusion is broader than the cases that Ms. Novotny cites and the two types of cases that she cites. One is the type that has a described definition for business or automobile business, quote, unquote. And then you go to the definition section, and you look and see what it's defined as. Those cases are very specific, and they say, okay, insurance company, if you want to define these particular acts or roles that a driver or user of the auto is performing, then we're going to hold you to that because you're defining these. The second type of case is the one where they define the case as used in a business. That's not this language. Used in a business is basically is it, you know, essentially a tool or an instrumentality to operate that business. And we don't have that here. We have a broader exclusion that just talks about working in a business of selling, servicing, or repairing auto. And so, you know, the first is working in a business. Was AAT working in a business? And we believe that the facts show that they were working within McNeilis' business. They had signed a contract to perform a service that both in the recitals and in the deposition of Carrie Ney, who was McNeilis' representative, said that that was a necessary operation for McNeilis to transport the finished vehicle between its two locations within its own business. And so that is, you know, we think very clear that McNeilis had a need to transport the vehicle, that it hired an outside company to perform that service within its business, and McNeilis believes that it is a service for them because it moves the vehicle closer to its customer, in this case Rumpke, for Rumpke to actually get the vehicle, the finished vehicle. We believe that the, you know, the cases use different language. We have necessary and expected, integral and necessary. I think the common word is necessary. I think that these cases that do find that this language, and I'm really not hearing Carolina Casualty argue that the Westfield language is ambiguous. I just think that they argue that their interpretation of the facts don't fit the policy language. So if we start from that, that the language is not ambiguous, and therefore the language gets its plain and ordinary meaning, that the cases of this court in Baker have properly put the working in a business in context of facts of somebody moving a vehicle either for their own business or for somebody else's business. And I just don't think that this requires an employer or an employee relationship, and I don't think that independent contractor is the relevant inquiry here. First of all, somebody being an independent contractor and working in a business or being even an agent of somebody are not mutually exclusive concepts. Somebody can be an independent contractor and still be an agent. I think that there's the Milligan versus Anderson case at 279F2D334 out of the Tenth Circuit, which basically states exactly that in terms of analyzing differences between independent contractors and agents. And certainly the restatement third of agency does the same thing. I think really what's important is that McNeilis has a service that it wants to provide. It hires AAT to execute that service, to engage in that service on McNeilis's behalf. And, you know, the master driveway service agreement is exactly that, a service agreement. And, you know, the level of control I just don't think is relevant. Yes, there are many, many requirements in that service contract. You know, AAT has to abide by the Federal Motor Carrier Safety Administration and DOT rating. They have to strictly comply with all federal and state highway laws. They have 100% on time delivery. Mr. Rowley, looking at the language of the exclusion, it says someone using a covered auto while he or she is working in a business. Would you agree that he or she there has to be Hanson, the driver, right? I don't know that I necessarily agree that it's he or she. I mean, certainly Hanson was the one physically driving the vehicle. Of course, there is a person who drives the vehicle. Hanson, I believe, in all intents and purposes here, is clothed with the responsibility and authority to act on behalf of AAT in this situation. Let's assume that that's a reasonable reading, that he or she is Hanson, is working in a business of selling, servicing, or repairing. It seems to me Hanson works for AAT and they're in the business of transporting and not in the business of selling, servicing, or repairing. What's wrong with that reading? Your Honor, first of all, the exclusion does not necessarily limit it to having to define transportation. I think an interpretation of what Mr. Hanson does for AAT is provide AAT a service. He is moving a vehicle that is part of AAT's contract service that they are providing McNeilis. But AAT's business is not selling, repairing, or servicing autos. It's transporting. Well, Your Honor, I believe that if you look at the language that Baker analyzes, look at the language that the Wendt case in Minnesota analyzes, I don't know that it's necessarily that the courts have said that transportation is not a service. I think it can be a service, Your Honor. It provides a, I want to get this language here, it is fulfillment of a business arrangement, which is what the Wendt case analyzes. And I believe that that can certainly satisfy a requirement or part of the exclusion in which it is servicing the auto. Because Mr. Hanson is performing that function for AAT in which AAT has put itself out there in the world, and specifically for McNeilis, as a service that it is providing. So do we have services nested here? I would argue yes, we do. And therefore, I believe, yes, Your Honor? When you say nesting, in other words, I gather you're saying AAT can be in the business of transporting vehicles, but also at the same time be working in the business of selling and servicing vehicles because it's performing an integral service for McNeilis. Is that right? Is that what you mean by nesting? Right. So I would argue that Mr. Hanson is performing a service for AAT, and AAT is performing that service for McNeilis. And the two, because of the nature of this agreement, is the way that one is necessarily integrated with the other for what McNeilis wants to do with its business. I mean, you know, the question would be, if Mr. Hanson was directly hired by McNeilis to drive this truck, would this be still within the ambit of this exclusion? And I would argue yes, it would be, because Mr. Hanson would be providing a service that McNeilis believes is necessary and integral to the service that it is providing to its customer. And so that is, you know, I believe that that is what, that's the way I use the term nested, because Mr. Hanson was not directly hired by McNeilis, but he is part of the company AAT that was hired by McNeilis. And I believe transportation is a service that is provided and expected to be provided by both AAT and Hanson for this garbage truck to get to Ohio to be delivered to the customer. So, you know, I believe that, you know, I believe that the court in Grisham in Arizona addressed a case that is, you know, basically on all fours in this case, and analyzed the situation of whether working in requires an employer, employee, or an agency, you know, and whether that matters for the business, and how the driver being employed by the upfitter entity performs the service, provides the necessary and integral service for that company, and how that then dovetails with what the court determined was an unambiguous policy. So, you know, we would ask the court to, you know, uphold and decide, again, that the Westfield exclusion is effective, and that Westfield does not have any responsibility to indemnify. And actually, if Ms. Novotny is going to address the priority umbrella claim, I guess I would like a chance to respond to that. I don't know that I want to presage her arguments. Would that be acceptable, or do you want me to make it? I can certainly make an argument. I think you better just proceed with your argument. She doesn't have much time left, so I don't know how much she'll have to say about it, and it was briefed, so you know their position on it. Why don't you go ahead and address it. All right. Thank you, Your Honor. You know, very quickly, I think that, first of all, we believe that there's no ambiguity in the priority section of the Westfield policy. In the other insurance section, we do believe that they conflict because they both refer to other insurance. We believe that the Westfield language referring to any of the other insurance has to refer to other insurance that are outside of the ambit of what the umbrella policy covers, because the umbrella policy specifically defines and uses in other parts of the policy a defined term of underlying insurance, which specifies the coverage that the umbrella policy is over. And, therefore, any of the other insurance, despite what Carolina Casually wants you to do, which is read in the defined term of underlying insurance into that section, it's not there. That defined term doesn't apply. There is a conflict in the law, and, therefore, you have to, we believe, analyze which policy is either closest to the risk or under the total policy insuring intent, which policy then has priority. And we believe under both of those analytical structures that the Carolina Casually policy better contemplates the risk. It's a specific drive-away contractor's endorsement that it has. It, which defines the drive-away services, which is exactly what AAT was doing here, and that under a bill of lighting, which is what AAT was doing here, and that the premiums are directly related to that risk. And Westfield's umbrella policy is, you know, not contemplating that risk. It is over and above all the different forms of insurance policies that are underlying the umbrella policy and not merely, you know, worldwide's brokerage action here in this case in obtaining the garbage truck for Rumpke. So on those bases, Westfield would argue that the Carolina policy has priority. And thank you. Thank you. I had one other question. You recommended a case called Milligan from the 10th Circuit. I don't see it cited in your brief, and when I looked at the case, the page number that you gave, it came up with Apple v. Kiwane Oil Company. So maybe you could try again on that one. Yes, Your Honor, I will do so. Do you have it there? I can get it. I have it just off to the side here. All right. Well, I'll come back to the citation after we hear Ms. Novotny's rebuttal. You may proceed. I'm sorry. You're down to 23 seconds. Why don't we put the clock at one minute so you can at least give us a coherent thought? Go ahead. Thank you. While Westfield's arguing to the court now that control is irrelevant, I think it's important to recognize in its briefs, both to this court and the court below, it itself said that control in the nature of the relationships is key. And so it's taking a completely contrary position now. And the reason control is important, again, it goes back to the purpose of these exclusions, including as the Minnesota court recognized long ago in the Wendt v. Wallace case. It's about control being transferred from the owner to the garage, and when the garage has control, it's responsible. We don't have that here. And I think the argument that Westfield's making that, you know, AAT was providing a service to McNeilis, I'll agree that they're providing a service. That's not what their exclusion says. It is whether you are servicing or repairing an auto, and it's an exclusion. It has to be interpreted strictly and narrowly, not in the broad fashion that Westfield is arguing. And so with that, I will rest. Very well. Thank you for your argument. Thank you to both counsel. Did you have a citation there? Yes, I do. I apologize. I miscited it before. Milligan v. Anderson is 522F2D1202. So I read the wrong line, Your Honor, in my notes, so I apologize. All right. Well, we'll try again and see if it comes up with that one. Thank you both for your arguments. The case is submitted.